UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE:

ALAN F. BEANE,

            Debtor,                     Bankruptcy Court
                                        Chapter 11
                                        Case No.  06-05723
.


UNITED STATES OF AMERICA,
Internal Revenue Service,

            Appellant,

-vs-                                    Case No. 2:11-cv-213

ALAN F. BEANE,

            Debtor/Appellee.
_____/


## <u>MEMORANDUM OPINION</u>

        This is an appeal from an order entered by the Bankruptcy Court concerning

a contested matter arising in a Chapter 11 proceeding in that court.  This Court has

jurisdiction of the appeal under 28 U.S.C. § 158.

        The underlying controversy involves a dispute between the IRS and the

Debtor/Appellee, Alan F. Beane, concerning Beane's civil income tax liabilities for

several tax years.  The case has been litigated in both the Tax Court and the

Bankruptcy Court, and it presents a number of technical and complex calculations

prompting the Tax Court judge to remark that the litigation involves a "voluminous and confusing record."[1]

In any event, the immediate question presented by this appeal relates to the collateral consequences (in the form of accrued interest) resulting from the application of a net loss carry back for the Debtor's tax year 2000 to satisfy a deficiency adjudicated by the Tax Court to be due for the tax year 1998.

The Bankruptcy Court ordered the IRS to make the necessary calculations and to file accountings showing the end result.  The IRS did so, and the Debtor filed an objection to the accounting on the ground that the method used by the IRS in the calculations was contrary to the Tax Court's decision and was precluded by the res judicata effect of the Tax Court judgment.

After a hearing, the Bankruptcy Court sustained the Debtor's objection and ordered another accounting.  That is the order that the IRS seeks to have reviewed and reversed on this appeal.

After a study of the briefs and oral argument of counsel, as well as the supplemental briefs filed at the court's direction after the argument, the case is ready for decision.  The Court has decided that the order on appeal should be affirmed.  An explanation follows.

---

[1]Beane v. Commissioner, 2009 WL 1810731 at * 3 (U. S. Tax Ct. 2009).  The Tax Court also expressed frustration, now shared by this Court, concerning the inability of counsel to clearly identify the issue to be decided and the relevant chronological chain of factual events that produced the issue.

# I

A.    Preliminary Issues.  Before getting to the merits, there are two questions raised by the parties concerning the jurisdiction of the Bankruptcy Court and of this Court.

1.    The Debtor/Appellee asserts that the order being appealed was an interlocutory order requiring leave of court as a condition precedent to the appellate jurisdiction of this Court under 28 U.S.C. § 158(a)(3).[2]

It is the law of this Circuit that the standard governing the finality of orders for purposes of bankruptcy appeals is more liberal than the standard applied in determining the finality of orders entered by this Court.  In re Donovan, 532 F.3d 1134, 1136 (11th Cir. 2008).  It is sufficient for purposes of an appeal under § 158, taken without leave of court, that the order being appealed acted to resolve a discrete controversy.  Charter Co. v. Prudential Insurance, Co., 778 F.2d 617, 621 (11th Cir. 1985).  The order on appeal meets that test.

2.    The Appellant/IRS challenges the jurisdiction or authority of the Bankruptcy Court to order a refund to the Debtor or the bankruptcy estate.  The argument is predicated upon two dependent legal premises:  (1) that the order appealed from was not entered in a "core" proceeding under 28 U.S.C. § 157(b)(2); and (2) that the Debtor/Appellee did not comply with the various requirements of the Internal Revenue Code that must be met before filing a suit for refund.

_____

[2]It might be said as a practical matter that the issue is moot because the Debtor/Appellee is the prevailing party on the merits of the appeal.  Nevertheless, since it involves a jurisdictional question, it must be decided.

The argument is unpersuasive because the effort of the Bankruptcy Court to untangle the Debtor's income tax account with the IRS began, and continued thereafter, upon the filing of a claim by the IRS in the Chapter 11 proceeding.[3]  The order on appeal was entered in a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B), and the Bankruptcy Court had jurisdiction to enter it.  Moreover, the Bankruptcy Court also had jurisdiction under Section 505(a)(1) of the Bankruptcy Code, 11 U.S.C. § 505(a)(1); and the time limitation of § 505(a)(2)(B)(ii) was met because the IRS accounting constituted a determination "by such governmental unit of such request [for a refund]."  To be sure, the Bankruptcy Court had initially deferred to the Tax Court, but then reentered the tax dispute after the Tax Court decision as it had the authority to do under § 505 whether it specifically cited the statute or not.

The Appellant/IRS also challenges the authority of the Bankruptcy Court to order payment of any refund (that may be found to be due) to the Debtor rather than the bankruptcy estate.  It appears, however, that this may be an illusory issue.  The order appealed from first states, in paragraph E of the decretal portion of the order, that "the Government shall prepare and file a third, interim accounting of the Minimum Net Refund due the Debtor and his bankruptcy estate. . . ." (Emphasis supplied).  The order then states in paragraph F that the refund due as shown by the accounting "may

---

[3]The IRS filed a claim in the bankruptcy proceeding on November 30, 2006, in the amount of $5,842,320.08.  It was last amended on February 9, 2011, the day before entry of the order on appeal, to show a zero balance.  From this the IRS argues that it was no longer a creditor and that any core proceeding relating to its claim had ended before the order was entered.  The argument is disingenuous.  The Bankruptcy Court was still involved in adjusting the claim.  Indeed, the order on appeal reserved for future resolution issues relating to the abatement of penalties assessed against or imposed upon the Debtor.

be accepted and deposited for collection by Debtor . . . ."  Since the Debtor is a debtor in possession in this Chapter 11 proceeding, and is a trustee of the estate under Section 1107 of the Bankruptcy Code, 11 U.S.C. § 1107, the order on appeal can fairly be read to require, contrary to the Appellant/IRS' interpretation, that payment be made to the Debtor in his capacity as a trustee and not personally.  On the other hand, since this issue was not raised in the Bankruptcy Court, and to the extent there may be some ambiguity in the matter, the ultimate remand to the Bankruptcy Court will be made with leave to that court to clarify that aspect of its order.

B.     The Merits.  The Tax Court determined that the Debtor/Appellee had an income tax deficiency of $1,359,664 for the tax year 1998, later reduced by the IRS to $1,340,664.   There is no dispute about those numbers or the finality of that determination; there was no post judgment motion for reconsideration of the Tax Court decision and it was not appealed.  It was and is a final judgment.

The IRS accounting ordered by the Bankruptcy Court with respect to the tax year 1998 (DE 609) was prepared by a Recomputation Specialist, Civil Tax Division, Office of Review, Department of Justice, and not by the IRS which had submitted the calculations adopted by the Tax Court.   In a declaration explaining her "recomputation" of the Debtor/Appellee's tax liability for 1998, the Specialist stated (DE 604-1 at 3-4):

> 9.     Pursuant to the Tax Court decision, Beane owed an additional $1,359,361 in income tax [for the tax year 1998].  This included a credit for a loss that occurred in the 2000 tax year that he was allowed to carry back to 1998.  The Tax Court's decision was based on the IRS's

computations submitted to the Tax Court pursuant to Tax
Court Rule 155.

10.     At Beane's request, the IRS agreed to abate
an additional $18,697 in tax to correct for some errors in the
IRS's Rule 155 computations which were adopted by the
Tax Court.  Accordingly, as is evident on IRS Form 2285,
attached hereto as Exhibit B, the IRS adjusted Beane's total
1998 tax liability from $1,359,361 to $1,340,664.

11.     This tax liability includes a benefit from a net
operating loss carryback from the 2000 tax year in the
amount of $1,505,793.  See Ex. B, col.(d).  Pursuant to 26
U.S.C. § 6611(f) and Treas. Reg. § 301.6611-1(f), and as
described in Internal Revenue Manual § 20.2.9.2, the
effective date for Beane's carry-back loss was April 15,
2001, the due date of Beane's 2000 federal income tax
return.

12.     Accordingly, as shown on Exhibit A, Beane's
income tax for 1998 was computed as follows:  in addition
to the self-reported tax liability of $4,674,032, pursuant to
the Tax Court decision and the IRS's abatement described
above, Beane owed an additional $2,846,457 in taxes for
1998 as of April 15, 1999.[1] The total amount of taxes Beane
owed for 1998 as of April 15, 1999 was $7,520,489.
(Emphasis supplied).

_____

[1]There is an entry for $1,359,361 in additional taxes and
an entry for an abatement of $18,697.  Both of these were
inputted incorrectly because they did not account for the
effective date of the 2000 net operating loss.  Accordingly they
were both reversed: The $1,359,361 was 'abated' and the
$18,697 abatement was re-'assessed.'  The net effect for these
4 entries is $0.  (Emphasis supplied).

In sum, the Department of Justice Recomputation Specialist decided – probably

correctly –  that the IRS calculations adopted by the Tax Court were wrong.

Establishing the deficiency after allowing the loss carryback without first calculating

the interest on the total tax due during the period from April 15, 1999 (when the 1998 tax was due) to April 15, 2001 (when the loss carryback for 2000 became available) effectively forgives a substantial portion of the interest obligation of the taxpayer that accrued on the unpaid deficiency during that period.[4]

As previously noted, the Government in its briefs says that it does not dispute the finality of the Tax Court determination that the Debtor/Appellee's 1998 income tax deficiency was $1,359,361.  Rather, although it does not put its argument in just these words, the Government merely uses its present calculation of the total tax deficiency before allowing credit for the loss carryback in order to "correctly" calculate and capture the interest obligation that the Tax Court did not account for in its computations.  The argument is an adroit but unpersuasive explanation.  The fact remains that the calculations, as candidly explained by the Recomputation specialist, employ a 1998 tax deficiency of $2,846,457 which is directly contrary to the Tax Court determination of $1,359,361 as the amount of 1998 tax deficiency.  And the fact that the Tax Court calculations were probably wrong in the way they applied the carryback credit – or wrong in any other manner – is inconsequential.  A final judgment by a court of competent jurisdiction, even if it is demonstrably incorrect, is binding on the parties unless set aside on appeal or through post judgment proceedings in the court that issued the judgment such as the remedy provided by Federal Rule of Civil

---

[4]See Manning v. Seeley Tube & Box Co. of New Jersey, 338 U.S. 561, 70 S. Ct. 386 (1950) (Subsequent cancellation of taxpayer's duty to pay assessed deficiency under "carry back" provision of Revenue Code as a result of taxpayer suffering operating loss in subsequent year did not cancel in like manner the duty to pay interest on the assessed deficiency.)

Procedure 60(b).  <u>United Student Aid Funds, Inc. v. Espinosa</u>, ____ U.S. ____, 130 S. Ct. 1367 (2010).

The order of the Bankruptcy Court brought here on appeal is AFFIRMED and REMANDED with leave to clarify the form of the payment to be made by the Government as herein discussed.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida, this 25th day of July, 2012.

_____

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record